CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 23 2012

JULIA C. DUDLEY, CLERK
BY: O. Thompson
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| DR. EMAD I. ATTA, | ) | Civil Action No. 7:11-cv-00463 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| DR. JOSEPH NELSON, III | ) | |
| INDIVIDUALLY AND IN HIS | ) | |
| CAPACITY AS CHAIRMAN OF | ) | |
| MEDICAL STAFF AND THE | ) | |
| MEDICAL STAFF, | ) | |
| | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

This is an action by *pro se* plaintiff Dr. Emad Atta, formerly a physician at Lewis Gale Medical Center ("Lewis Gale" or "the Hospital"), against the Lewis Gale Medical Staff ("Medical Staff") and its Chairman, Dr. Joseph Nelson, III, for breach of contract, tortious interference with contractual relations, and racial and ethnic discrimination. Dr. Atta also claims that pursuant to the Health Care Quality Improvement Act, 42 U.S.C. §§ 11101 *et. seq.* ("HCQIA"), he is entitled to receive a copy of certain "peer review records" that would allegedly buttress his complaint. As Dr. Nelson is the only member of the Medical Staff whom Dr. Atta names, this action distills to a suit against Dr. Nelson individually. Dr. Nelson has moved to dismiss pursuant to Rule 12(b)(6), contending that he is not contractually obligated to Dr. Atta, that he is not a third-party intermeddler for purposes of Dr. Atta's tortious interference claim, that Dr. Atta has not alleged facts showing a right to relief under any conceivably applicable civil rights statute, and that the HCQIA, standing alone, does not afford him access to the peer review records he is seeking. The court agrees and grants defendant's motion to dismiss.

# I.

In the light most favorable to Dr. Atta from the facts alleged in his complaint and Hospital bylaws he cites, and on which he relies (Compl. ¶¶ 30, 31, 67, 77, 102, 103 & 111 and "second cause of action" at 17, ECF No. 1-1; Medical Staff Bylaws, ECF No. 21-1), the facts are as follows.[1] In May of 2008, Dr. Atta signed a contract with Lewis Gale to practice obstetrics and gynecology, conditioned upon his obtaining "medical privileges" from the Lewis Gale Board of Trustees (the "Board") pursuant to bylaws approved by that Board governing Medical Staff privileges. Under the contract, Dr. Atta's failure to maintain those medical privileges would constitute a contractual breach. In conformity with the Hospital's bylaws, the Medical Staff and its chairman, Dr. Nelson, were responsible for the decisions regarding medical privileges to the hospital. On Dr. Nelson's recommendation, the Board granted Dr. Atta medical privileges as an OB/GYN. In granting Dr. Atta's privileges, the Board also required Dr. Atta to supervise another physician at the Hospital. Dr. Atta claims he was not prepared for this additional responsibility, either by professional experience or by any guidance from Dr. Nelson or the Medical Staff, and he contends that "[t]his additional burden . . . without any documentation of protocols and procedures was *meant to interfere* with [his] contract with the hospital by making it impossible for him to fulfill his obligations." (Compl. ¶ 19, ECF No. 1-1) (emphasis added).

Dr. Atta claims the arrangement proved burdensome, making it difficult for him to maintain his OB/GYN practice, and he so informed Dr. Nelson and the Medical Staff. Shortly

---

[1] Though Dr. Atta relies on the bylaws in his complaint, he did not provide a copy. The defendants have filed the bylaws and requested their integration into the pleadings. It is proper to consider such documents on a motion to dismiss. See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009) ("This circuit has also held that courts may consider a document that the defendant attaches to its motion to dismiss if the document 'was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.'") (quoting Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)).

thereafter, an incident occurred in the operating room while Dr. Atta was supervising, resulting in Dr. Nelson suspending both Dr. Atta and Dr. Atta's supervisee.[2]

Dr. Atta attended a peer review hearing that was held for the purpose of scrutinizing the incident and the resulting suspensions. The hearing participants allowed Dr. Atta's suspension to continue until the "Executive Committee" could meet to determine whether Dr. Atta's suspension should remain in place. Dr. Nelson invited Dr. Atta and Dr. Atta's supervisee to attend the Executive Committee meeting. Dr. Atta alleges he heard, through the boardroom door, discussion of issues that should not have been mentioned in the meeting and that he overheard several statements he attributed to racial and ethnic animus as he waited to enter the meeting; specifically, Dr. Atta alleges he overheard a member of the Executive Committee who had stepped outside the boardroom to take a call state over the phone "they want these doctors out because they just don't like the way they look or something." (Compl. ¶¶ 94 & 96.) After deliberation, the Executive Committee upheld Dr. Nelson's decision.

Shortly after the Executive Committee meeting, Dr. Nelson offered Dr. Atta a final hearing in accordance with the Medical Staff bylaws and internal rules and regulations. Dr. Nelson appointed the hearing committee. Dr. Atta claims that, contrary to the bylaws, Dr. Nelson denied him an *individual* final hearing separate from the hearing of the physician Dr. Atta was supervising.[3] In November of 2009, Dr. Nelson made his recommendation to the Hospital Board of Trustees and Dr. Atta's suspension was finalized.

---

[2] The details of the incident are unclear from Dr. Atta's submissions.

[3] Dr. Atta alleges various procedural deficiencies with each of the three hearings, none of which are relevant to the issues before the court.

3

## II.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion, the claimant's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (citation omitted). While the court must accept the claimant's factual allegations as true, Hemi Group, LLC v. City of N.Y., 130 S.Ct. 983, 986–87 (2010), this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Rather, the complaint must contain sufficient facts from which the court, calling upon "its judicial experience and common sense," can conclude that the pleader has "shown" that he is entitled to relief, id. at 1950; Fed. R. Civ. P. 8(a), that the plaintiff's claims are not simply "conceivable" but that they are "plausible." Twombly, 550 U.S. at 70. With those precepts in mind, the court turns to the plaintiff's complaint here and concludes that his complaint fails to state plausible claims for relief, and, accordingly, grants the defendant's motion to dismiss.

### A.

Even though the Medical Staff bylaws expressly provide that the "bylaws and the rules and regulations do not create, nor shall be construed as creating a contract of any nature between or among the hospital, the Board and any person granted any clinical privilege provided for under the terms of [those] documents" (Medical Staff Bylaws, Art. XIX, Section 5, pg. 64, ECF No. 21-1), Dr. Atta claims that the "Medical Staff Bylaws" afforded him the contractual right to

4

an individual hearing separate from the physician he was supervising.[4] Dr. Nelson argues that the bylaws do not purport to afford an individual hearing or create a contractual relationship between the parties. The court agrees with the defendant.

First, the bylaws say nothing about an individual hearing. Rather, the bylaws simply state that "[a] practitioner shall be entitled to a hearing before an ad hoc Hearing Committee . . . pursuant to these Bylaws only after an adverse recommendation is proposed to be made or an adverse action is proposed to be taken by a Decision Making Body." The bylaws make no reference to and establish no right to an *individual* hearing. Second, Virginia courts recognize "disclaimers that disavow any intent to be contractually bound to the policies stated in [a] handbook." Shiflett v. GE Fanuc Automation Corp., No. 95-0073-C, 1996 U.S. Dist. LEXIS 14306, at *12 (W.D. Va. July 23, 1996) (citing Cunningham v. Ashland Chem. Co., 900 F.2d 250 (4th Cir. 1990); White v. Fed. Express Co., 729 F. Supp. 1536 (E.D. Va. 1990)). The bylaws on which Dr. Atta relies contain just such a disclaimer. Since the bylaws do not even purport to grant Dr. Atta an individual hearing, and since there is no contract by virtue of the bylaws or no other discernible basis for a contract creating a right to an individual hearing (or, for that matter, creating any obligations at all between Dr. Atta and the defendant), there can be no breach. Accordingly, the court will dismiss Dr. Atta's breach of contract claim.

**B.**

Dr. Atta alleges that the Board, based on Dr. Nelson's recommendation, granted Dr. Atta privileges with the added requirement that he proctor another physician at the hospital. (Compl. ¶ 17, ECF No. 1-1.) He contends that "this additional burden . . . without any documentation of

---

[4] Although Dr. Atta does not cast this issue as a breach of contract claim or as *any* claim in particular—instead stating only that he "was denied his right to an individual hearing afforded by the Medical Staff Bylaws"—the court liberally construes his claim as being one for breach of contract.

5

protocols and procedures was meant to interfere with [his] contract with the hospital by making it impossible for him to fulfill his obligations," (Compl. ¶ 19, ECF No. 1-1), and constituted tortious interference with Dr. Atta's contractual relationship with the hospital, (Compl. 17, ECF No. 1-1). Noting that tortious interference in Virginia requires a third-party and that Dr. Atta's complaint in essence "alleges that the hospital, through its medical staff, somehow interfered with the hospital's own contract," Dr. Nelson has moved to dismiss. (Def's. Mot. to Dismiss 12, ECF No. 6.) The court agrees that Dr. Atta has failed to allege a plausible claim for relief for tortious interference and dismisses the claim.

Virginia has adopted the cause of action for tortious interference as defined in the Restatement (Second) of Torts § 766 (1965): "One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." Chaves v. Johnson, 230 Va. 112, 120 (1985). Virginia courts have refined this definition to four required elements: "(i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interfer[er]; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted." DurretteBradshaw, P.C. v. MRC Consulting, L.C., 277 Va. 140, 145 (2009) (citing Chaves, 230 Va. at 120)). Justification and privilege are affirmative defenses to a claim of tortious interference, Chaves, 230 Va. at 121, but the Supreme Court of Virginia also has recognized that they apply "with equal force to determining what the law will deem to be an improper method by the interferer when there is an existing commercial relationship

6

between it and the other part to the contract with the plaintiff," Lewis-Gale Med. Ctr., LLC v. Alldredge, 282 Va. 141, 152 (2011) (citations omitted).

By Dr. Atta's own account, when the Board granted him privileges at the Hospital it also imposed the obligation that he proctor another physician. In enforcing that obligation as Chairman of the Medical Staff, Dr. Nelson was carrying out responsibilities imposed by the Board. In carrying out those responsibilities, Dr. Nelson was not acting as an officious, third-party intermeddler in Dr. Atta's contract. Consequently, he was not a third party subject to liability for tortious interference. See, e.g., Fox v. Deese, 234 Va. 412, 427 (1987) ("A person cannot intentionally interfere with his own contract."); Brown v. Loudoun Golf & Country Club, Inc., 573 F. Supp. 399, 404 (E.D. Va. 1983) (dismissing a claim against a defendant for tortious interference by reason that the defendant was acting as the club's agent); Cleco Const. Co. v. Richmond Metro. Auth., No. LF-421-4, 2000 WL 20606, at *1 (Va. Cir. Ct. Jan. 10, 2000) (dismissing on the same grounds). But however his legal relationship or role is categorized vis-à-vis the Hospital, in carrying out his own contractual obligations to the Hospital, he is not subject to liability for interfering with Dr. Atta's relationship with the Hospital. See e.g., Lewis-Gale, 282 Va. at 152 (noting that where the defendant has its own contractual or commercial relationship with the other party to the plaintiff's contract, the court balances the competing interests in "determining what the law will deem to be an improper method" by that defendant). In short, Dr. Atta's complaint does not plausibly show that Dr. Nelson is a third party for purposes of a tortious interference claim or that by enforcing Dr. Atta's proctoring obligation he improperly interfered in Dr. Atta's contract. Indeed, Dr. Atta's logic distills to this illogical

assertion: Dr. Nelson is interfering with Dr. Atta's contract by enforcing it. The court dismisses this implausible claim.[5]

## C.

Dr. Atta asserts a claim of racial and ethnic discrimination against Dr. Nelson and the Medical Staff but fails to identify any particular statutory provision on which he grounds the claim. Dr. Nelson has moved to dismiss the claim on the ground the factual allegations of Dr. Atta's complaint fail to raise a cognizable claim under a conceivably applicable statute. The court agrees and dismisses the claim.

There is nothing in Dr. Atta's complaint that even remotely positions Dr. Nelson as an employer under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* (2006), or as a state actor under 42 U.S.C. § 1983, or as a conspirator under 42 U.S.C. § 1985. This leaves 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcement of private contracts, as the only conceivable statutory basis for Dr. Atta's claim of racial and ethnic discrimination, and he has not shown a plausible claim under that provision. In his eighteen-page complaint containing 130 allegations, there is but one asserted, ambiguous fact on which he bases the claim. He alleges that he heard a member of the Executive Committee considering his suspension (who had stepped outside the boardroom to take a personal phone call) state: "Don't wait it's going to be a long night, I have never heard such things in my life, they want these doctors out because they just don't like the way they look or something." (Compl. ¶ 96.)[6] Though the court liberally, not technically, construes Dr. Atta's complaint, he

---

[5] Though Dr. Nelson has pled the two-year statute of limitations as a defense, Va. Code § 8.01-243(A), the court need not reach this issue and does not do so.

[6] Dr. Atta's complaint also references the statements of an expert who concluded that there was no "wrongdoing" in the operating room incident that led to Dr. Atta's suspension. According to Dr. Atta, his expert states that "he has never seen or heard of such an egregious abuse of the peer review process as

still must plead facts raising his "claim to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The assertion falls far short of showing racial or ethnic animus by anyone, let alone Dr. Nelson. Consequently, the court dismisses the claim.

## D.

Dr. Atta claims that he is entitled to the possession of peer review records "pursuant to the [HCQIA]."[7] Dr. Nelson has moved to dismiss the claim on the ground that the HCQIA does not grant aggrieved physicians a right of action to obtain those records. The court agrees and dismisses Dr. Atta's HCQIA claim.

Congress passed the HCQIA in 1986 to combat a crisis in the monitoring of health care professionals by creating a national database of incidents of malpractice and encouraging physicians to participate in peer review proceedings by providing them immunity for their actions in those proceedings. Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 24, 31 (1st Cir. 2002). Congress did not include an express private right of action under the HCQIA. See Westmoreland v. Pleasant Valley Hosp., Inc., No. 3:08-1444, 2009 WL 1659835, at *3 (S.D.W. Va. June 12, 2009) ("There is no express private cause of action under HCQIA."); Isaiah v. WHMS Braddock Hosp. Corp., No. 07-622, 2007 WL 2405671, at *1 (D. Md. Aug. 15, 2007) (same); Jadali v. Alamance Reg'l Med. Ctr., 225 F.R.D. 181, 184 (M.D.N.C. Dec. 16,

---

[he] witnessed in this case. At best, the actions were by misguided individuals who do not understand the appropriate use of peer review and the normal complications of surgery. At worst, and [he] feel[s] more likely, this was a personal vendetta against Dr. Atta principally for economic reasons and tainted by some hospital ethnic hostilities." (Compl. ¶ 119.) A medical expert's opinion or "feeling" that "ethnic hostilities" might be involved is no substitute for a factual assertion plausibly showing they are involved. His offered opinion is reminiscent of the "prim[i]tive English trial practice in which 'oath-takers' or 'compurgators' were called to stand behind a particular party's position in any controversy." Chambers v. Mississippi, 410 U.S. 284, 296 (1973).

[7] Dr. Atta believes these records will contain evidence of the racial slurs he overheard during the Executive Committee hearing. However, given that he claims to have overheard the slurs, nothing prevented him from alleging them specifically in his complaint.

9

2004) (same). Nor has any court found that the HCQIA provides an *implied* private right of action. See Westmoreland, 2009 WL 1659835, at *3 ("[T]here is no implied cause of action [under the HCQIA]."); Isaiah, 2007 WL 2405671, at *1 ("[P]laintiff's claim fails because there is no express or implied cause of action under the HCQIA."); Jadali, 225 F.R.D. at 184 ("[T]he HCQIA is intended only to encourage the establishment of peer review . . . . It does not provide a private cause of action."). Accordingly, the court will dismiss Dr. Atta's HCQIA claim.

## III.

Dr. Atta has failed to state a plausible claim for relief. Accordingly, the court will grant the defendant's motion to dismiss.

**Enter**: January 23, 2012.

_____

UNITED STATES DISTRICT JUDGE